JESSIE LOUISE BOWERS, respondent,

*v.*

JOHN C. BOWERS, appellant.

[Decided January 31st, 1918.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

This is an action for divorce on the ground of adultery. While there was no direct proof of the commission of the offence, the testimony satisfied me that the defendant and co-respondent had both the inclination and the opportunity to commit the act, and on the conclusion of the hearing I announced that I was satisfied of their guilt and would advice a decree for the petitioner.

The parties were married on March 17th, 1892, and for six years prior to the filing of the petition they had resided in Metuchen, Middlesex county, where defendant conducted a garage business.

Petitioner is about fifty-three years old and the defendant is about four years younger. The co-respondent Mrs. Waite has been an acquaintance of theirs for some years, and in June, 1915, she moved to 162 Chadwick avenue, Newark. Petitioner first noticed an intimacy between her husband and Mrs. Waite in October, 1913. In July, 1914, she told her husband, who had been staying out at night until two, three or four o'clock in the

morning, that he would have to give her up or give up Mrs. Waite, to which he made no reply. That same night she spoke to Mrs. Waite, telling her she had broken up her home, to which Mrs. Waite replied, "Oh, yes, I believe Leonard (her son) had something to say about that this afternoon, and added, "You go down the block and go home and mind your own business." After this defendant neglected petitioner, left her alone night after night, even when she was ill, and never took her riding in his automobile, and they did not speak to each other except when absolutely necessary, and he showed no affection for her, and although he paid the household bills he refused to give her any money; his excuse is that if he gave her money she would spend it in employing detectives to get evidence against him.

A few days after petitioner had spoken to defendant and Mrs. Waite about their relations, she again spoke to her husband on the subject and he told her, "You can have anything you like or you ask for, but I will go with any woman I damn please."

Since March, 1914, petitioner and defendant have not cohabitated and have occupied separate rooms. And while Mrs. Waite lived in Metuchen defendant occasionally took meals at her home, and after her removal to Newark he was a very frequent visitor to her home, calling there three or four times a week, apparently driving from Metuchen to Newark in his car; he usually arrived late at night and left very early in the morning, leaving usually from one to four A. M. During this time people living across the street saw him hugging and kissing Mrs. Waite while she was dressed only in her nightgown, or in nightgown and some wrap over it. Petitioner herself saw some of this conduct while boarding opposite Mrs. Waite's for a few days in November, 1915. On December 7th, 1915, petitioner closed her home in Metuchen and moved to 161 Chadwick avenue, opposite Mrs. Waite's, where she obtained board with a Mrs. Kratzig, for the purpose of obtaining what evidence she could of her husband's visits to Mrs. Waite's, and she remained there about three months, and saw her husband leaving the Waite house nearly every morning and arriving there nearly every evening. She and others saw defendant and Mrs. Waite

39

out riding in the automobile at late hours of the night or in the early hours of the morning; they saw the affectionate greetings exchanged between them when he left in the morning; Mrs. Waite was seen to put her arms around him and kiss him while they were sitting in the front room of her home, and Mrs. Waite taunted and laughed at Mrs. Bowers when she met her on the street. Defendant admits calling at Mrs. Waite's frequently after her removal to Newark, at late hours of the night and leaving at early hours in the morning; he states that the calls were made because he and Mrs. Waite's twenty-year-old son were working together on an engineering course in some correspondence school; and when petitioner closed their home, he began to board with Mrs. Waite and is still boarding with her, because he claims there is not a suitable place in Metuchen where he carries on business, in which he could board; but the testimony shows that this is not true. Defendant and Mrs. Waite deny that any illicit relations exist between them; they claim Mrs. Bowers is unreasonably jealous and is of a nagging disposition. She impressed me as a very mild, respectable woman, saddened by the trouble that had come upon her and by the breaking up of her home; and her appearance and conduct upon the witness stand and the manner in which she gave her evidence, were in marked contrast to the brazen, cynical and indifferent conduct and manner of the defendant and Mrs. Waite; in fact, the defendant seemed to realize the unpleasant position in which he was placed much more than Mrs. Waite did, who treated the offence with which she was charged in the lightest possible manner. A sample of her denial is shown by the following extract from her testimony, when being examined by counsel for defendant: "Did he ever kiss you? A. No, sir; when that happens, I want to be alone, not with an audience." Again, on cross-examination, she stated defendant informed her that she had been named as co-respondent in this case when he asked for board, and then,

"Q. Notwithstanding that he acquainted you with the fact that you were openly charged as the co-respondent in this case, you nevertheless permitted the doors of your home to be opened to him?

"A. Surely.

88 N. J. Eq. Bowers v. Bowers.

"Q. The mere fact that you were charged as a co-respondent in this case of record, you opened the doors of your home and said there is nothing there from which the public can gather anything?

"A. No.

"Q. Is that the only answer you can give me?

"A. Yes."

I cannot believe an innocent woman would act or testify as Mrs. Waite has done in this case. The excuse offered by the defendant for boarding with her, even while this case has been pending and the hearing held, is so flimsy that it cannot be believed. I am convinced defendant and Mrs. Waite committed the offence charged and that petitioner has shown herself entitled to a decree.

*Mr. August C. Streitwolf,* for the respondent.

*Mr. Russell Watson,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.